UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LARRY LEE JONES,<br><br>   Petitioner,<br><br>  v.<br><br>ERIC ARNOLD, Warden<br><br>   Respondent. | Case No. 1:16-cv-01216-DAD-MJS (HC)<br><br>**FINDINGS AND RECOMMENDATION TO DENY PETITION FOR WRIT OF HABEAS CORPUS**<br><br>**(ECF NO. 1)**<br><br>**THIRTY (30) DAY OBJECTION DEADLINE** |

  Petitioner is a state prisoner proceeding pro se with a petition for writ of habeas corpus under 28 U.S.C. § 2254. Respondent is represented by Barton Elwell Bowers of the Office of the California Attorney General.

  The petition raises the following claims: (1) the trial court erred in instructing the jury with CALCRIM No. 371; and (2) the trial court erred in giving CALCRIM Nos. 362, 371, & 372. (ECF No. 1.)

  As discussed below, the undersigned recommends the petition be denied.

## I. Procedural History

Petitioner is in the custody of the California Department of Corrections and Rehabilitation pursuant to the October 11, 2013 judgment of the Kern County Superior Court, imposing a sixteen year determinate sentence for assault with a deadly weapon resulting in the infliction of great bodily injury, and other enhancements.[1] (Lodged Doc. 1 at 290-91.)

Petitioner appealed, raising claims of instructional error based on CALCRIM Nos. 362, 371, and 372. (Lodged Doc. 11.) On April 27, 2016, the California Court of Appeal for the Fifth Appellate District affirmed (Lodged Doc. 14.) Petitioner filed a petition for review in the California Supreme Court (Lodged Doc. 15), which was summarily denied on July 13, 2016 (Lodged Doc. 16).

Petitioner filed the instant petition on August 17, 2016. (ECF No. 1.) On October 17, 2016, Respondent filed an answer. (ECF No. 12.) Petitioner filed no traverse. The matter is submitted.

## II. Factual Background

The following facts are taken from the Fifth District Court of Appeal's April 27, 2016 opinion. They and are presumed correct. 28 U.S.C. § 2254(e)(1).

### *INTRODUCTION*

> Following a petty dispute, appellant Larry Lee Jones slashed his neighbor repeatedly with a sheetrock cutter after the neighbor punched him. Appellant claimed self-defense. During his first jury trial, he was found not guilty of attempted murder but the jury was unable to reach a verdict on assault. Following the declared mistrial, a second jury found appellant guilty of assault with a deadly weapon (Pen.Code, § 245, subd. (a)(1)1), finding true that he personally inflicted great bodily injury (§ 12022.7). The trial court found true a prior

---

[1] In his first jury trial, Petitioner was found not guilty of attempted murder, but the jury was unable to reach a verdict on assault. People v. Jones, No. F068237, 2016 WL 1725723, at *1 (Cal. Ct. App. Apr. 27, 2016), review denied (July 13, 2016). Following a declared mistrial, a second jury found Petitioner guilty on the assault charge. Id.

2

strike felony. Appellant was sentenced to a total of 16 years in state prison.

On appeal, appellant contends his conviction should be reversed for alleged instructional error. We find his arguments unpersuasive and affirm.

## *BACKGROUND*

**I. Prosecution's Case.**

Appellant lived in the Bakersfield Lodge in Kern County when this crime occurred and Deljwun Keys was his downstairs neighbor. On May 2, 2012, appellant and Keys had an argument that lasted approximately five or 10 minutes. Appellant pulled a knife out of his pocket. As he walked away from Keys, appellant told him, "[Y]ou better hope I feel better about this situation tomorrow."

The following day, Keys's girlfriend complained that appellant had intimidated her at a local store earlier that morning. She also complained that she heard appellant refer to her as a "bitch." Keys saw appellant outside and he challenged appellant to a fight. Keys was unarmed.

According to Keys, appellant rushed at him with a knife. Keys told him to put the knife away, saying it loudly so others would hear, but appellant kept coming. Keys began to turn to run away, and appellant began cutting him with the knife. As Keys ran, appellant gave chase and continued slashing at him. Appellant chased Keys to the parking lot, where Keys fell down. Appellant stood over Keys and cut Keys's neck. Keys got up and ran into the lodge's office.

Once inside, Keys held the office door shut. Appellant followed and tried to get in, pushing on the door for about a minute before he walked away. The office manager called law enforcement and an ambulance. Keys suffered approximately 12 slash wounds to his head, neck and back. He was hospitalized for one day and required approximately 235 staples to his back, and approximately 100 stitches in his neck. Keys suffered no injuries to the front of his body. According to Keys, he never swung at appellant or reached for his waistband before running away.

3

**II. Defense Evidence.**

In addition to being a resident, appellant also worked at the lodge as a maintenance man. He often hung sheetrock as part of his regular job duties, and he carried a sheetrock cutter, which was similar to a box cutter. Appellant had permission from his parole officer to carry the cutter, which had an approximate two-inch razor blade.

In the months leading up to the crime, appellant and Keys had various disagreements and arguments. About four or five months before the assault, Keys told appellant that he had a gun and he would shoot him. Appellant told the jury that he feared Keys to some degree.

Regarding their argument the night before the assault, appellant characterized Keys as the aggressor, stated that Keys looked "crazy," and denied threatening Keys with a knife. Appellant denied doing anything to Keys's girlfriend at the store the following morning, but he saw her standing in line and they greeted each other.

Before the assault occurred, appellant was hanging sheetrock in a vacant room. He went outside and was talking with a tenant when he saw Keys. Keys yelled that he was going to kill appellant and Keys ran towards him. Keys stuck his left hand in his pocket, ran up to appellant, and struck appellant with his right hand. Appellant grabbed Keys's left hand, which was still in his pocket, and appellant tussled with him. Appellant told the jury he grabbed Keys's left hand because Keys had threatened him before and appellant was not sure if Keys had a gun.

Appellant said he used his sheetrock cutter to get Keys off of him. Keys ran away and appellant chased him because he was afraid Keys would run to his room and retrieve a weapon. Appellant told the jury he wanted Keys to go to the office and he directed Keys there with verbal commands and slashes with the cutter. When Keys fell in the parking lot, appellant said he "backed off" and allowed Keys to get up. Keys ran to the office. Appellant testified he shut the office door to keep Keys inside, and he had no intention of going inside. Appellant's boss, the manager, asked appellant what happened and the manager told appellant to leave. Appellant walked across the street to another hotel.

Appellant spent the night in another hotel and he left for Arizona the next day. He told the jury he left because he

4

> needed "some air" and "a break from Kern County." Appellant said he did not know what happened to the sheetrock cutter. He gave his bloody clothes to his girlfriend. He said he did not know what she did with his clothes. Appellant later told police that he "snapped" and could not remember much after Keys attacked him.
>
> Two other men witnessed the fight. James Shiu was at the lodge visiting a friend. Shiu heard a commotion and saw someone arguing with appellant. That man walked towards appellant at a "fast pace" with his left hand in his pocket. The man punched appellant with his right hand, and appellant pulled out an object, which he used to slice the man.
>
> Arthur Nicholson was at the lodge to visit a friend when he saw a man approach appellant with his hand in his pocket. The other man swung at appellant with his right hand before appellant pulled out something and starting cutting him.
>
> The general manager of the lodge, Rohit Amin, testified that appellant had complained seven or eight times in the past that Keys was "badgering" him. On the day in question, Keys ran into the office with appellant right behind him. Keys, who had blood on him, shut and locked the office door once he entered. According to Amin, appellant walked away without Amin telling him to do so.

People v. Jones, No. F068237, 2016 WL 1725723, at *1–2 (Cal. Ct. App. Apr. 27, 2016), review denied (July 13, 2016).

### III. Jurisdiction and Venue

Relief by way of a writ of habeas corpus extends to a prisoner under a judgment of a state court if the custody violates the Constitution, laws, or treaties of the United States. 28 U.S.C. § 2254(a); 28 U.S.C. § 2241(c)(3); Williams v. Taylor, 529 U.S. 362, 375 n.7 (2000). Petitioner asserts that he suffered a violation of his rights as guaranteed by the U.S. Constitution. Petitioner was convicted and sentenced in this district. 28 U.S.C. § 2241(d); 2254(a). The Court concludes that it has jurisdiction over the action and that venue is proper.

5

**IV.     Applicable Law**

The petition was filed after April 24, 1996 and is governed by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"). Lindh v. Murphy, 521 U.S. 320, 326 (1997); Jeffries v. Wood, 114 F.3d 1484, 1499 (9th Cir. 1997). Under AEDPA, federal habeas corpus relief is available for any claim decided on the merits in state court proceedings if the state court's adjudication of the claim:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

**A.     Standard of Review**

A state court decision is "contrary to" federal law if it "applies a rule that contradicts governing law set forth in [Supreme Court] cases" or "confronts a set of facts that are materially indistinguishable from" a Supreme Court case, yet reaches a different result." Brown v. Payton, 544 U.S. 133, 141 (2005) (citing Williams, 529 U.S. at 405-06). "AEDPA does not require state and federal courts to wait for some nearly identical factual pattern before a legal rule must be applied. . . . The statue recognizes . . . that even a general standard may be applied in an unreasonable manner" Panetti v. Quarterman, 551 U.S. 930, 953 (2007) (citations and quotation marks omitted). The "clearly established Federal law" requirement "does not demand more than a 'principle' or 'general standard.'" Musladin v. Lamarque, 555 F.3d 830, 839 (2009). For a state decision to be an unreasonable application of clearly established federal law under § 2254(d)(1), the Supreme Court's prior decisions must provide a governing legal principle (or principles) to the issue before the state court. Lockyer v. Andrade, 538 U.S. 63, 70-71 (2003).

6

A state court decision will involve an "unreasonable application of" federal law only if it is "objectively unreasonable." Id. at 75-76 (quoting Williams, 529 U.S. at 409-10); Woodford v. Visciotti, 537 U.S. 19, 24-25 (2002). "[A]n unreasonable application of federal law is different from an incorrect application of federal law." Harrington v. Richter 562 U.S. 86, 101 (2011) (citing Williams, 529 U.S. at 410) (emphasis in original). "A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." Id. (citing Yarborough v. Alvarado, 541 U.S. 653, 664 (2004)). Further, "[t]he more general the rule, the more leeway courts have in reading outcomes in case-by-case determinations." Id.; Renico v. Lett, 130 S. Ct. 1855, 1864 (2010). "It is not an unreasonable application of clearly established Federal law for a state court to decline to apply a specific legal rule that has not been squarely established by [the Supreme Court]." Knowles v. Mirzayance, 556 U.S. 111, 122 (2009).

**B.    Requirement of Prejudicial Error**

In general, habeas relief may only be granted if the constitutional error complained of was prejudicial. That is, it must have had "a substantial and injurious effect or influence in determining the jury's verdict." Brecht v. Abrahamson, 507 U.S. 619, 623 (1993); see also Fry v. Pliler, 551 U.S. 112, 121-22 (2007) (holding that the Brecht standard applies whether or not the state court recognized the error and reviewed it for harmlessness). Some constitutional errors, however, do not require a showing of prejudice. See Arizona v. Fulminante, 499 U.S. 279, 310 (1991); United States v. Cronic, 466 U.S. 648, 659 (1984). Furthermore, for claims alleging ineffective assistance of counsel under Strickland v. Washington, 466 U.S. 668 (1984), the Strickland prejudice standard is applied and courts do not engage in a separate analysis applying the Brecht standard. Avila v. Galaza, 297 F.3d 911, 918, n.7 (2002); Musalin v. Lamarque, 555 F.3d 830, 834 (9th Cir. 2009).

## C. Deference to State Court Decisions

"[S]tate courts are the principal forum for asserting constitutional challenges to state convictions," not merely a "preliminary step for a later federal habeas proceeding." Richter, 562 U.S. at 103. Whether the state court decision is reasoned and explained, or merely a summary denial, the approach to evaluating unreasonableness under § 2254(d) is the same: "Under § 2254(d), a habeas court must determine what arguments or theories supported or . . . could have supported, the state court's decision; then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of [the Supreme Court]." Id. at 102. In other words:

> As a condition for obtaining habeas corpus relief from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.

Id. at 103. Thus, the Court may issue the writ only "in cases where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with [the Supreme Court's] precedents." Id. at 102.

"Where there has been one reasoned state judgment rejecting a federal claim, later unexplained orders upholding that judgment or rejecting the claim rest on the same grounds." See Ylst v. Nunnemaker, 501 U.S. 797, 803 (1991). This is referred to as the "look through" presumption. Id. at 804; Plascencia v. Alameida, 467 F.3d 1190, 1198 (9th Cir. 2006). Determining whether a state court's decision resulted from an unreasonable legal or factual conclusion, "does not require that there be an opinion from the state court explaining the state court's reasoning." Richter, 562 U.S. at 98. "Where a state court's decision is unaccompanied by an explanation, the habeas petitioner's burden still must be met by showing there was no reasonable basis for the state court to deny relief." Id. ("This Court now holds and reconfirms that § 2254(d) does not require a

state court to give reasons before its decision can be deemed to have been 'adjudicated on the merits.'").

**IV.     Review of Petition**

    **A.     Claim One: CALCRIM No. 371**

Petitioner contends that CALCRIM No. 371 violated his right to a fair trial and due process because it allowed the jury to make a pro-prosecution inference and relieved the State of its obligation to prove every element of the offense beyond a reasonable doubt. (ECF No. 1 at 5.)

        **1.     State Court Decision**

The California Supreme Court summarily denied this claim. Accordingly, the Court "looks through" the Supreme Court's decision to the reasoned decision of the Fifth District Court of Appeal. See Ylst, 501 U.S. at 804. The Court of Appeal rejected the claim as follows:

> **I. Any Error With CALCRIM No. 371 Was Harmless.**
>
> Appellant asserts that the trial court prejudicially erred in instructing the jury with CALCRIM No. 371.
>
> **A. Background.**
>
> The trial court instructed the jury with CALCRIM No. 371, stating: "If the defendant tried to hide evidence against him, that conduct may show that he was aware of his guilt. If you conclude that the defendant made such an attempt, it is up to you to decide its meaning and importance. However, evidence of such an attempt cannot prove guilt by itself."
>
> Defense counsel objected to this instruction, arguing it was not supported by the evidence. The prosecutor responded that the instruction was appropriate because appellant "took the weapon with him and no longer had possession of it. A reasonable inference could be that he hid or destroyed it."
>
> The court noted it spent time considering this instruction. The court said a flight instruction under CALCRIM No. 372 was appropriate, and CALCRIM No. 371 was "part and parcel of the flight in this case." The court commented that appellant left the lodge, there was testimony about what happened to

his clothing and the weapon, and appellant testified he did not know what happened to the weapon. The court felt CALCRIM No. 371 was appropriate because there was a basis to determine whether appellant suppressed the weapon in conjunction with his flight.

**B. Standard of review.**

A trial court's decision to give or not give a particular instruction is reviewed on appeal without deference because it is predominantly a question of law. As such, an independent or de novo standard of review is used. (People v. Cole (2004) 33 Cal.4th 1158, 1217.)

**C. Analysis.**

Appellant contends there was no evidence that he hid anything. He believes the instruction under CALCRIM No. 371 was "argumentative" and supported the prosecution's preferred inference that not knowing what happened to the sheetrock cutter meant he hid or discarded it. He asserts that the trial court did not make any logical connection between this instruction and the testimony. He argues this instruction allowed the jury to make an "inferential leap" in the absence of evidence, which lessened the prosecution's burden of proving its case. Respondent makes contrary arguments and maintains that no prejudice resulted even if the instruction with CALCRIM No. 371 was unsupported by this record.

We need not resolve the dispute regarding whether or not the evidence supported the instruction under CALCRIM No. 371. We agree with respondent that prejudice did not occur even when we assume this theory was not supported by the record.

It is error to give a legally correct instruction that is irrelevant or inapplicable to the case. (People v. Cross (2008) 45 Cal.4th 58, 67.) However, an irrelevant or inapplicable instruction generally does not require reversal because it is considered only a technical error. (Ibid.) Affirmance is generally the normal course. (People v. Guiton (1993) 4 Cal.4th 1116, 1129.) However, reversal might be necessary "if the record affirmatively demonstrates there was prejudice, that is, if it shows that the jury did in fact rely on the unsupported ground." (Ibid.) "In determining whether there was prejudice, the entire record should be examined, including the facts and the instructions, the arguments of counsel, any communications from the jury during

10

deliberations, and the entire verdict. [Citation.]" (Id. at p. 1130.)

Appellant contends any error must be analyzed for prejudice under the federal standard because the state was relieved of its obligation to prove every element beyond a reasonable doubt. We disagree. The federal Constitution is not violated when an unsupported theory is presented for a jury's consideration. (People v. Guiton, supra, 4 Cal.4th at pp. 1129–1130.) To the contrary, such an error is one of state law, subject to the traditional test under People v. Watson (1956) 46 Cal.2d 818, 836 (Watson). (People v. Guiton, supra, at p. 1130.) "Under Watson, reversal is required if it is reasonably probable the result would have been more favorable to the defendant had the error not occurred. [Citation.]" (Ibid.) Further, reversal is warranted for instruction on an unsupported theory only if that theory was the only basis for the guilty verdict. There is no prejudice if the jury based its verdict on a valid ground, even if it also based the verdict on the invalid ground. (Ibid.)

Here, the trial court instructed the jury with CALCRIM No. 200 as follows: "You must decide what the facts are. It is up to all of you, and you alone, to decide what happened based only on the evidence that has been presented to you in this trial." With this instruction, the court also stated: "Some of these instructions may not apply, depending on your findings about the facts of the case. Do not assume just because I give a particular instruction that I am suggesting anything about the facts. After you have decided what the facts are, follow the instructions that do apply to the facts as you find them." Based on these instructions, the jury was aware it could find there were no facts demonstrating that appellant attempted to hide evidence. In such a situation, CALCRIM No. 371 would have been inapplicable. Moreover, CALCRIM No. 371 expressly instructed the jury it was to decide the meaning and importance of appellant's actions if the jurors concluded that appellant made an attempt to hide evidence.

Based on its verdict, the jury rejected appellant's self-defense claim, but there is nothing to suggest that it did so because of the instruction with CALCRIM No. 371. To the contrary, Keys was unarmed. After Keys fled, appellant chased him and continued to slash him with the sheetrock cutter. Keys required approximately 235 staples to his back, and approximately 100 stitches in his neck. Although he suffered approximately 12 slash wounds, none were to the front of his body. Immediately after this incident, appellant left the area

11

> and spent the night in a different hotel room. The following day he drove to Arizona.
>
> A review of this entire record does not affirmatively demonstrate with a reasonable probability that the jury found appellant guilty based on CALCRIM No. 371. Accordingly, assuming the instruction was unsupported by the evidence, any error was harmless.

Jones, 2016 WL 1725723, at *2-4.

### 2. Applicable Law

Instructional error warrants federal habeas relief only if the "ailing instruction by itself so infected the entire trial that the resulting conviction violates due process[.]" Waddington v. Saruasad, 555 U.S. 179, 191 (2009) (quoting Estelle v. McGuire, 502 U.S. 62, 72 (1991)). "[N]ot every ambiguity, inconsistency, or deficiency in a jury instruction rises to the level of a due process violation." Dixon v. Williams, 750 F.3d 1027, 1032 (9th Cir. 2014) (citation omitted). To warrant relief, the erroneous instruction must have had a substantial and injurious effect or influence in determining the jury's verdict. Hedgpeth v. Pulido, 555 U.S. 57, 61-62 (2008) (per curiam) (citing Brecht, 507 U.S. at 623). The instruction "may not be judged in artificial isolation," but instead must be considered "in the context of the instructions as a whole and the trial record." McGuire, 502 U.S. at 72.

The Due Process Clause protects the accused "against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." Francis v. Franklin, 471 U.S. 307, 313 (1985) (citing In re Winship, 397 U.S. 358, 364 (1970)). Instructions that "have the effect of relieving the State of its burden of persuasion beyond a reasonable doubt of every essential element of a crime" violate this principle. Id. Thus, instructions that contain mandatory presumptions – i.e., that "the jury . . . must infer the presumed fact if the State proves certain predicate facts" – are impermissible. Id. at 314 (emphasis added). On other hand, instructions that contain a permissive inference – i.e., that "suggests to the jury a possible conclusion to

be drawn if the State proves predicate facts, but does not require the jury to draw that conclusion" – are constitutionally sound. Id.

### 3. Analysis

The California Court of Appeal declined to resolve whether CALCRIM No. 371 was supported by the facts and properly given. Instead, the court determined that any error in the instruction was not prejudicial. The court further determined that the instruction did not relieve the State of its burden to prove the elements of the offense beyond a reasonable doubt. The court was not unreasonable in its rejection of this claim.

Federal courts that have examined this issue have determined that CALCRIM 371 does not create an impermissible presumption of guilt or shift the prosecutor's burden of proof. See, e.g., Beck v. Chavez, No. 1:11-CV-01303 AWI, 2013 WL 3992116, at *10 (E.D. Cal. Aug. 1, 2013); Jennings v. Santoro, No. EDCV 15-1185-GW (KS), 2016 WL 8608479, at *14 (C.D. Cal. Nov. 23, 2016), report and recommendation adopted sub nom. Jennings v. Stanoro, No. EDCV 15-1185-GW (KS), 2017 WL 1138122 (C.D. Cal. Mar. 27, 2017); Robinson v. Hedgpeth, No. CV 12–2084 JVS SS, 2013 WL 6185027, at *22 (C.D. Cal. Nov. 25, 2013). CALCRIM 371 permits, but does not mandate, an inference of guilt if the jury finds that the defendant tried to hide evidence. See Francis, 471 U.S. at 314 A permissive inference does not relieve the State of its burden of persuasion because it still requires the State to convince the jury that the suggested conclusion should be inferred based on the predicate facts proved. Id. at 314. In other words, whether such conduct occurred is a question left entirely to the jury. More specifically, the challenged instruction informed the jury that it was to decide whether the defendant had made an attempt to hide evidence and, if so, to decide the meaning and importance of that attempt. (Lodged Doc. 7 at 429.) The jury was instructed that "evidence of such attempt cannot prove guilt by itself." (Id.)

Furthermore, even assuming the instruction was erroneous, it did not have a "substantial and injurious effect or influence in determining the jury's verdict." Hedgpeth,

555 U.S. at 58. The jury was instructed that some of the instructions may not apply, and that it was the jury's role to determine "what the facts are," and to "follow the instructions that do apply to the facts as you find them." (Lodged Doc. 7 at 420.) In addition, the jury was instructed that the prosecution was required to prove Petitioner's guilt beyond a reasonable doubt, and also to prove beyond a reasonable doubt that Petitioner did not act in self-defense. (Lodged Doc. 7 at 420-21, 36.) The jury is presumed to follow the court's instructions. Weeks v. Angelone, 528 U.S. 225, 234 (2000).

Finally, substantial evidence supported the jury's finding that Petitioner had not acted in self-defense. As summarized by the Court of Appeal:

> Keys was unarmed. After Keys fled, appellant chased him and continued to slash him with the sheetrock cutter. Keys required approximately 235 staples to his back, and approximately 100 stitches in his neck. Although he suffered approximately 12 slash wounds, none were to the front of his body.

Jones, 2016 WL 1725723, at *4.

Based on the foregoing, the challenged instruction did not infect the entire trial in a way that resulted in a conviction that violates due process, and any error in giving the instruction was harmless. Petitioner is not entitled to relief on this claim.

### B. Claim Two: CALCRIM Nos. 362, 371, and 372

Petitioner argues that these instructions improperly allowed the jury to presume he was guilty of assault and did not act in self-defense.

#### 1. State Court Decision

The Fifth District Court of Appeal rejected this claim as follows:

> **II. CALCRIM Nos. 362, 371 and 372 Did Not Presume Appellant's Guilt.**
>
> Appellant argues the three "consciousness of guilt" instructions under CALCRIM Nos. 362, 371 and 372 improperly presumed he was guilty of assault and did not act in self-defense.

**A. Background.**

In addition to CALCRIM No. 371, which is set forth above, the court provided the following instructions to the jury:

**1. CALCRIM No. 362:**

"If the defendant made a false or misleading statement before this trial relating to the charged crime knowing the statement was false or intending to mislead, that conduct may show he was aware of his guilt of the crime and you may consider it in determining his guilt. If you conclude that the defendant made the statement, it is up to you to decide its meaning and importance. However, evidence that the defendant made such a statement cannot prove guilt by itself."

**2. CALCRIM No. 372:**

"If the defendant fled or tried to flee immediately after the crime was committed, that conduct may show that he was aware of his guilt. If you conclude that the defendant fled or tried to flee, it is up to you to decide the meaning and importance of that conduct. However, evidence that the defendant fled or tried to flee cannot prove guilt by itself."

**B. Standard of review.**

On appeal, disputed jury instructions are reviewed in light of the trial record as a whole. (People v. Paysinger (2009) 174 Cal.App.4th 26, 30.) The question is "whether it is reasonably likely the jury understood the challenged instruction in a way that undermined the presumption of innocence or tended to relieve the prosecution of the burden to prove defendant's guilt beyond a reasonable doubt. [Citation.]" (Ibid.)

**C. Analysis.**

Appellant argues the language in CALCRIM Nos. 362, 371 and 372 presumed the existence of the crime and his guilt, which allowed an inference that favored the prosecution. He insists that these instructions violate due process as they lower the prosecution's burden of proof of each element of the crime beyond a reasonable doubt. He points to the

15

CALJIC equivalents of these instructions (Nos. 2.03, 2.06, and 2.52), which he asserts leaves open the question of whether a defendant is guilty. He contends that his conviction must be reversed because he was prejudiced.

The parties dispute whether appellant has forfeited these arguments on appeal from a failure to object below. We need not resolve that dispute. When we presume no forfeiture occurred, appellant's claim fails on the merits.

In People v. Hernández Ríos (2007) 151 Cal.App.4th 1154 (Ríos), this court rejected a similar argument which appellant now raises. In Ríos, the defendant was found guilty of voluntary manslaughter with personal use of a deadly weapon following a bar fight in which a broken beer bottle was used to sever the victim's jugular vein. On appeal, the defendant challenged, in part, CALCRIM No. 372, contending it had language which did not appear in the analogous CALJIC No. 2.52. It was argued that CALCRIM No. 372 lowered the prosecution's burden of proof and allowed the jury to presume the defendant's guilt because the defendant was "'aware of his guilt' " based on his flight after the crime. (Ríos, at pp. 1155–1156.) In rejecting that argument, this court analyzed the word "aware" which appears in CALCRIM No. 372 but which is absent in CALJIC No. 2.52. This court also reviewed two analogous Supreme Court opinions which dealt with challenges to CALJIC No. 2.52. Ríos held that the language in CALCRIM No. 372 does not presume the existence of the defendant's guilt or lower the prosecution's burden of proof. (Ríos, at p. 1159.)

Appellant contends this court's decision in Ríos is factually distinguishable from the present matter, asserting he presented substantial evidence of self-defense while the defendant in Ríos did not. He urges this court to not extend Ríos "to cases in which there is substantial evidence of self-defense." He argues it was possible he fled while being fully aware of his responsibility for hurting Keys while also believing he was not guilty of a crime because he was justified in fighting back. He maintains "the evidence supporting a defense matters when the instructions at issue make assumptions about the defendant's state of mind and when the defense is self-defense or justification." He acknowledges that each of these instructions tells the jury that any "'consciousness of guilt'" evidence was not sufficient by itself to prove guilt, but asserts that the three instructions together allowed the jury to rely upon and use evidence not directly related to guilt. We disagree.

16

> The strength or weakness of the self-defense evidence in Ríos was irrelevant to this court's affirmance of CALCRIM No. 372. (Ríos, supra, 151 Cal.App.4th at pp. 1157–1159.) Moreover, we presume jurors to be intelligent people who are capable of understanding the instructions and applying them to the facts of the case. (People v. Hajek and Vo (2014) 58 Cal.4th 1144, 1220, overruled on another ground in People v. Rangel (2016) 62 Cal.4th 1192, 1216.)
>
> CALCRIM Nos. 362, 371 and 372 required the jury to determine if appellant (1) knowingly made a false or misleading statement; (2) tried to hide evidence; and/or (3) fled (or tried to). If so, the jury was to determine the meaning and importance of that conduct, but the jury was instructed those findings could not prove guilt by itself. It appears highly unlikely reasonable jurors would have understood that these instructions, either individually or taken together, dictated that the crime was committed or that they should presume a consciousness of guilt. (See People v. Paysinger, supra, 174 Cal.App.4th at p. 30 [rejecting similar argument regarding CALCRIM No. 372].) We do not find that these instructions lowered the prosecution's burden of proof, even where evidence of self-defense, whether substantial or not, was presented.
>
> Our conclusion is supported by other jury instructions. The jurors were told they alone where the ones who would decide the facts, and some of the jury instructions may not apply depending on their findings of fact. The jurors were told not to assume that the court suggested anything about the facts based on the particular instructions given. They were told that appellant was presumed innocent and the prosecution had to prove him guilty beyond a reasonable doubt. The jury was instructed on self-defense and told that appellant was not guilty if he used lawful self-defense.
>
> A review of this record shows it is not reasonably likely the jury understood the challenged instructions in a way that undermined the presumption of innocence or tended to relieve the prosecution of the burden to prove appellant's guilt beyond a reasonable doubt. Accordingly, appellant's conviction will not be reversed.

Jones, 2016 WL 1725723, at *4–6.

### 2. Analysis

This claim fails on the same grounds as Petitioner's prior claim.

First, the challenged instructions contained permissive inferences rather than mandatory instructions.[2] CALCRIM 362 required the jury to decide whether the defendant knowingly made a false or misleading statement and, if so, the meaning and importance of the statement. CALCRIM 372 required the jury to decide whether the defendant fled or tried to flee, and the meaning or importance of that conduct. The jury specifically was instructed that such evidence, standing alone, was insufficient to prove guilt. The challenged instructions did not violate Petitioner's due process rights because they did not relieve the State of its burden to prove Petitioner's guilt beyond a reasonable doubt. Francis v. Franklin, 471 U.S. 307, 313 (1985).

Furthermore, any error in giving these instructions did not have a "substantial and injurious effect or influence in determining the jury's verdict." Hedgpeth, 555 U.S. at 58. As stated above, the jury was clearly instructed on its role as fact-finder, its obligation to follow only those instructions that applied to the facts found by the jury, and the prosecution's burden to prove the defendant's guilt beyond a reasonable doubt. Additionally, abundant evidence refuted Petitioner's claim of self-defense.

Based on the foregoing, the challenged instruction did not infect the entire trial in a way that resulted in a conviction that violates due process, and any error in giving the instruction was harmless. Petitioner is not entitled to relief on this claim.

### V. Conclusion and Recommendation

Based on the foregoing, it is HEREBY RECOMMENDED that the petition for writ of habeas corpus be DENIED.

The findings and recommendation are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(1). Within **thirty** (30) days after being served with the findings and recommendation, any party may

---

[2] Petitioner's arguments regarding CALCRIM 371 are the same as those presented in his first claim. The analysis of CALCRIM 371 is set forth above and will not be repeated here.

18

file written objections with the Court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendation." Any reply to the objections shall be served and filed within fourteen (14) days after service of the objections. The parties are advised that failure to file objections within the specified time may result in the waiver of rights on appeal. Wilkerson v. Wheeler, 772 F.3d 834, 839 (9th Cir. 2014) (citing Baxter v. Sullivan, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated: October 18, 2017       /s/ *Michael J. Seng*
                              UNITED STATES MAGISTRATE JUDGE